UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| CALANDRA L. BOBBETT, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 5:22-cv-21<br>)<br>) |
| PRUITTHEALTH – DURHAM, LLC, | ) **JURY TRIAL DEMANDED**<br>) |
| Defendant. | ) |

## CIVIL ACTION COMPLAINT

Plaintiff, Calandra L. Bobbett ("Ms. Bobbett" or "Plaintiff"), hereby complains and alleges against Defendant, PruittHealth – Durham, LLC, ("Defendant" or "the Company") the following:

### INTRODUCTION

1. This is an action for an award of damages, declaratory and injunctive relief, attorneys' fees and other relief on behalf of Plaintiff, an employee of Defendant, who has been harmed by Defendant's discriminatory employment practices.

2. Ms. Bobbett brings this action against Defendant for violations of the Americans with Disabilities Act of 1990, as amended, 42, U.S.C. §12101, *et seq*. ("ADA") and North Carolina common law.

3. Defendant violated Plaintiff's rights by terminating her and/or refusing to hire her based on Plaintiff's disability and/or Defendant's perception that Plaintiff was disabled.

### THE PARTIES

4. Plaintiff is a citizen of the United States subject to the jurisdiction of this Court.

5. Defendant is a North Carolina healthcare business in Durham County, North Carolina.

**JURISDICTION AND VENUE**

6. This action arises under a federal statute including the ADA. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because claims brought herein constitute a federal question under the laws of the United States.

7. The Court has supplemental jurisdiction over Ms. Bobbett's state law claims pursuant to 28 U.S. Code § 1367 because they arise out of the same circumstances as her federal claims and are based upon a common nucleus of operative fact.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this district and is subject to personal jurisdiction in this district for the purposes of this action.

9. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (a redacted copy of that Charge is attached hereto as Exhibit A). On October 18, 2021 Plaintiff received a Dismissal and Notice of Rights (a redacted copy of that Notice is attached hereto as Exhibit B).

10. Plaintiff filed the instant lawsuit within 90 days of receiving the Notice of Rights.

**STATEMENT OF FACTS**

11. Bobbett applied with the North Carolina Board of Nursing and became a licensed LPN in or about August 2019.

12. Defendant advertised an open position of LPN.

13. Bobbett applied for the position and on July 23, 2019 she met with a representative of Defendant by the name of "Moses." During the roughly two-hour meeting, she was provided

2

Case 5:22-cv-00021-M    Document 1    Filed 01/12/22    Page 2 of 8

with a tour of the building and Defendant explained the expectations of the position to Bobbett and she met with the Director of Nursing, Ebony Harrington ("Ms. Harrington).

14. Upon receiving notice that she successfully passed her nursing exam on August 3, 2019, she was invited back to meet with Defendant.

15. On August 7, 2019, Plaintiff met with "Moses", and she was offered the position of LPN with a salary of $23.00 per hour and a sign on bonus of $4,000, with a four-year commitment.

16. At the time the offer of employment was made, Bobbett was employed as an LPN at another company and was earning $26.00 per hour plus bonuses.

17. Defendant assured Bobbett there would be additional financial opportunities in the form of overtime, bonuses and raises. In reliance on the assurances for additional compensation, Bobbett accepted Defendant's offer of employment.

18. During the August 7, 2019 meeting, Bobbett signed onboarding documentation and an offer letter outlining the terms of her employment.

19. As part of the onboarding process, Bobbett was required to submit to a drug screen and complete other paperwork.

20. On August 7, 2019, prior to her drug screen, Bobbett disclosed to Defendant that she was taking prescribed medications, including Naproxen, Suboxone, and a multi-vitamin.

21. Bobbett was involved in two automobile accidents several years ago that rendered her injured. Her injuries included significant injury to her back, which caused significant pain that is permanent.

22. As part of her treatment for the back injury, Bobbett was prescribed opioid pain medication, including Oxycodone.

23. Bobbett was prescribed the Oxycodone for several years when she sought alternative pain management treatment options. Bobbett understood that the Oxycodone would not resolve her pain and she recognized that she had become dependent upon it and was addicted.

24. Her medical provider recommended that she take Suboxone to treat her addiction and to prevent her body from going into withdrawal due to lack of Opioids.

25. Bobbett currently takes the Suboxone as prescribed by her medical care provider and no longer uses any narcotic pain medications.

26. Further, use of the Suboxone as prescribed does not alter or impair Bobbett's ability to perform the essential functions of her job safely and is used to treat her drug addiction.

27. Defendant requested that Bobbett provide a copy of the prescription for the Suboxone. Bobbett complied and Defendant was provided a copy.

28. Bobbett provided the prescription to Defendant even though she was under no legal obligation to do so.

29. On August 20, 2019, Defendant notified Bobbett that she had successfully completed all the necessary post-hire background checks.

30. At the time Bobbett received her LPN license the first week of August, 2019, she had not used any narcotic pain medicine, including Oxycodone, in several years.

31. On or about September 16, 2019, Ms. Harrington contacted Bobbett asking about Bobbett's interest in the LPN position. Bobbett had to remind Ms. Harrington that she had already signed the offer letter and concluded the onboarding process and was waiting to hear about orientation.

32. During that call, Ms. Harrington questioned Bobbett about her use of the Suboxone. Bobbett disclosed her prior opioid addiction caused by her back injury. She also told Ms. Harrington that the Suboxone is prescribed to treat her addiction.

33. After waiting several weeks to start employment, and after having already resigned from her prior job, Defendant rescinded the job offer.

34. On October 2, 2019, Ms. Harrington contacted Bobbett and informed her that the Company was rescinding the job offer.

35. Ms. Harrington informed Bobbett that the offer was being rescinded because the Company did not want her to be a nurse after she disclosed her past Oxycodone addiction and her current Suboxone use.

36. Ms. Harrington explained that the Company did not want to be responsible if "something were to happen" with Bobbett having access to narcotic medication. In other words, Defendant rescinded the job offer because of Bobbett's past addiction and current use of Suboxone.

37. At the time Defendant rescinded the offer for employment, Plaintiff was not in active addiction and had not used narcotic pain medication for several years.

38. Bobbett was left without income as she had already submitted her resignation based on the offer of employment from Defendant.

39. Defendant's actions caused extreme mental anguish for Bobbett and she sustained significant damages.

**FIRST CLAIM FOR RELIEF**
**Violation of Americans with Disabilities Act,**
**42, U.S.C. §12101, et seq.**

40. Plaintiff realleges and incorporates by reference Paragraphs 1-39 as if fully set forth herein.

41. Bobbett is a qualified individual within the meaning of 42 U.S.C. § 12111(8) in that she has a past drug addiction, the Defendant perceived her as having a disability, she has the

requisite education to perform and can perform the essential functions of a Licensed Practical Nurse, and either held or desired to hold the position as a Licensed Practical Nurse.

42. Defendant is an "employer" within the meaning of 42 U.S.C. §§ 12111(5) in that it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding years. Thus, it is also a covered entity within the meaning of 42 U.S.C. § 12111(5).

43. Bobbett was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4). Alternatively, Bobbett was an applicant for employment.

44. Prior to and at the time that Defendant either terminated Bobbett's employment or failed to hire her, Bobbett was qualified for employment as a Licensed Practical Nurse.

45. On October 2, 2019, due to Bobbett's actual or perceived disability, Defendant either terminated her employment or failed to hire her. 42. U.S.C. § 12112(a). Specifically, Defendant's discriminatory actions included, but were not limited to (1) limiting, segregating Bobbett in a way that adversely affected her opportunities or status because of her actual or perceived disability within the meaning of § 12112(b)(1); (2) utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability within the meaning of § 12112(b)(3)(A); (3) using qualification standards, employment tests, or other selection criteria that screened out or tended to screen out individuals with disabilities, despite the fact that doing so was not consistent with business necessity, within the meaning of § 12112(b)(6); and (4) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, within the meaning of § 12112(b)(5)(A).

46. Bobbett has been damaged by the Defendant's violation of the ADA inasmuch as she has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

47. Bobbett is entitled to her attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.

48. Bobbett is further entitled to any and all relief permitted under the ADA, 42 U.S.C. § 12117(a), including equitable relief.

### SECOND CLAIM FOR RELIEF
### North Carolina Common Law
### (Wrongful Discharge in Violation of Public Policy)

49. Plaintiff incorporates by reference Paragraphs 1-39 as if fully set forth herein.

50. The public policy of the State of North Carolina as set forth in N.C.G.S. 143-422.1 et. seq. prohibits employers from terminating an employee, or otherwise subjecting employee to adverse employment actions, because of the employee's disability.

51. Defendant's termination of Plaintiff due to her actual or perceived disability is a violation of that public policy and, therefore, Defendant wrongfully discharged Plaintiff.

52. Defendant's termination of Plaintiff due to her actual or perceived disability caused Plaintiff's injuries including but not limited to losses in wages, salary and benefits and great emotional distress, mental pain, suffering, stress, grief, worry and mental anguish.

53. Defendant's termination of Plaintiff was willful, intentional and in reckless disregard for Plaintiff's legally protected rights.

54. Therefore, Plaintiff sues Defendant for wrongful discharge in violation of public policy.

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Calandra Bobbett, respectfully requests this Court enter judgment in her favor and grant the following relief:

(1.) Order Defendant to compensate Plaintiff, reimburse her, and make her whole for any and all pay and benefits she would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, overtime, salary/pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

(2.) Award Plaintiff any and all other compensatory damages to make her whole for Defendant's illegal actions, including for emotional distress / pain and suffering;

(3.) Order Defendant to pay punitive damages to punish Defendant for its willful, deliberate, malicious, and outrageous conduct, and to deter Defendant or other employers from engaging in such misconduct in the future;

(4.) Award Plaintiff all reasonable costs and attorneys' fees incurred in connection with this action;

(5.) Award Plaintiff pre-judgment and post-judgment interest;

(6.) Award Plaintiff such other and further equitable and legal relief as available and appropriate under the circumstances; and

(7.) Grant Plaintiff a trial of this matter by a jury.

Respectfully submitted,

*/s/ Michael C. Harman*
Michael C. Harman
**Harman Law, PLLC**
16507 Northcross Drive, Suite B
Huntersville, North Carolina 28078
Telephone: 704.885.5550
E-Mail: michael@harmanlawnc.com
*Attorney for Plaintiff*